## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------------X

DILSHOD VOHIDJONOV, *individually and on*
*behalf of all other persons similarly situated,*

                               Plaintiffs,

                -against-

LUXE EVENT RENTALS LLC, ABC CORPORATIONS 1-3,
CHAIM TREITEL, SHERZOD TURDIEV, and
JOHN and JANE DOES 1-2, *jointly and severally,*

                               Defendants.

---------------------------------------------------------------------------------X

Case No.:

**CLASS AND COLLECTIVE
ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

       Plaintiff DILSHOD VOHIDJONOV (hereinafter "Plaintiff") individually and as and for all similarly situated employees, by and through his attorneys, hereby complains of Defendants LUXE EVENT RENTALS LLC (hereinafter "LUXE EVENT"), ABC CORPORATIONS 1-3, ("Corporate Defendants"), CHAIM TREITEL ("TREITEL"), SHERZOD TURDIEV ("TURDIEV"), and JOHN and JANE DOES 1-2 ("Individual Defendants") (collectively, the "Defendants"), upon information and belief as follows:

### NATURE OF THE CLAIMS

1. Plaintiff was an employee of the Defendants at Defendants' place of business at 3610 Quentin Road, Brooklyn, New York 11234.

2. Plaintiff brings this action to recover unpaid wages owed to him and similarly situated employees pursuant to the Fair Labor Standards Act, as amended, 2149 U.S.C. §§201 *et. seq.* ("FLSA") and the New York Labor Law ("NYLL") §§ 650 *et seq*. and for failure to provide proper wage notices and wage statements, pursuant to NYLL §§ 190 et seq. and the supporting

regulations.

3.  Plaintiff alleges on his behalf and on behalf of other similarly situated current and former employees of Defendants, pursuant to Fed. R. Civ P. 23(a) and (b), that Defendants willfully violated the FLSA and NYLL by (i) failing to pay the minimum wage, (ii) failing to pay overtime premium pay; (iii) failing to provide the Notice of Acknowledgement of Payrate and Payday under N.Y. Lab. Law §195.1, and (iv) failing to provide an accurate wage statement under N.Y. Lab. Law §195.3.

4.  Defendants' payment schemes resulted in systematic underpayment of wages to Plaintiff and other similarly situated employees in violation of the federal and state wage laws.

5.  Plaintiff alleges, pursuant to the FLSA and NYLL that he and similarly situated employees of Defendants are entitled to recover from Defendants: (1) unpaid wages (2) unpaid overtime (3) unpaid minimum wage (4) liquidated damages (5) interest and (6) attorneys' fees and costs.

6.  Plaintiff brings FLSA claims on behalf of himself and all other similarly situated employees who worked for the Defendants at any time during the three (3) years prior to the commencement of this action ("Collective" members).

7.  Plaintiff brings his claims under NYLL on behalf of himself and all other similarly situated employees who worked for the Defendants at any time during the six (6) years prior to the commencement of this action ("Class" or "Class Action Members").

8.  In addition, Defendants filed fraudulent tax withholdings to the Internal Revenue Service ("IRS") for Plaintiff and similarly situated employees by paying other similarly situated employees without withholding proper Federal and State tax, social security, FICA, and employee withholding deductions for all wages paid to Plaintiff and similarly situated employees. Accordingly, Plaintiff brings this action on behalf of himself and similarly situated employees pursuant to Internal Revenue Code 26 U.S.C. § 7434 for relief, damages, fees and

costs in this matter because Defendants willfully filed fraudulent tax information forms with the IRS.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 because this action involves federal questions regarding the deprivation of Plaintiff's rights under the FLSA. Pursuant to 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over Plaintiff's related claims under New York state law.

10. Pursuant to 28 U.S.C. § 1391(b), venue is proper in this district because a substantial part of the events or omissions giving rise to this action occurred in this district, Defendants maintained business operations in this district and Corporate Defendants were duly organized and active in the State of New York, Kings County.

11. Individual Defendants are the owners, managing-members, officers, and/or managers of the Corporate Defendants, and are individually responsible for unpaid wages.

12. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

13. The IRS will be notified of this Complaint as the Internal Revenue Code requires. Specifically, the Internal Revenue Code provides that "[a]ny person bringing an action under [26 U.S.C. § 7434] Subsection (a) shall provide a copy of the complaint to the IRS upon the filing of such complaint with the court." 26 U.S.C. § 7434(d).

## PARTIES

14. Plaintiff was and is a resident of Kings County, New York.

15. Defendant LUXE EVENT was and is a domestic for-profit corporation organized under the laws of the State of New York, with a principal place of business at 3610 Quentin Road, Brooklyn, New York 11234, County of Kings.

16. At all times relevant to this action, Defendant LUXE EVENT operates or operated a warehouse at 303 Louisiana Avenue, Brooklyn, New York 11207.

17. At all times herein, Plaintiff worked at Defendants' Brooklyn, New York warehouse since his commencement of employment.

18. At all times relevant to this action, Defendant LUXE EVENT is a business or enterprise engaged in interstate commerce within the meaning of the FLSA in that it has had employees engaged in commerce or in the production of goods for commerce, and handles, sells, or otherwise works on goods or materials that have been moved in or produced for commerce by any person and had an annual gross volume of sales not less than $500,000.00.

19. Defendants ABC CORPORATIONS 1-3 are unknown/fictitious corporations, which are owned and/or operated by Defendants and jointly operate and/or employ employees in furtherance of Defendants' business, which shall be determined and added through this litigation.

20. Defendants ABC Corporations 1-3 are domestic for-profit corporations organized under the laws of the State of New York and were used jointly and interchangeably by Defendants to compensate employees, including Plaintiff, his wages.

21. At all times relevant to this action, ABC CORPORATIONS 1-3, have been a business or enterprise engaged in interstate commerce within the meaning of the FLSA in that it has had employees engaged in commerce or in the production of goods for commerce, and handles, sells, or otherwise works on goods or materials that have been moved in or produced for commerce by any person and had an annual gross volume of sales not less than $500,000.00.

22. At all times relevant, ABC CORPORATIONS 1-3 are various entities used by Defendants, including "Maverick Group" at different periods to compensate Plaintiff and similarly situated employees despite Plaintiff and similarly situated employees providing the same and regular duties for Defendant LUXE EVENT.

23. At all relevant times, Defendant LUXE EVENT is an "employer" and an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and the regulations thereunder.

24. At all relevant times, Defendant ABC CORPORATIONS 1-3 are an "employer" and an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and the regulations thereunder.

25. At all times herein, Corporate Defendants jointly employed Plaintiff and similarly situated employees.

26. Defendant CHAIM TREITEL, upon information and belief, was and is a resident of the State of New York.

27. Defendant SHERZOD TURDIEV, upon information and belief, was and is a resident of the State of New Jersey.

28. Defendant JOHN and JANE DOES 1-2 are unknown/fictitious names for individuals, one of which is known as "Aras", upon information and belief, are residents of the State of New York, which shall be determined and added through this litigation.

29. At all times relevant to this action, CHAIM TREITEL was and is an executive, director, member, and owner of Corporate Defendants.

30. At all times relevant to this action, SHERZOD TURDIEV was and is an executive, director, member, and manager of Corporate Defendants.

31. At all times relevant to this action, JOHN and JANE DOES 1-2 was and are an executive director, member, and manager of Corporate Defendants.

32. Individual Defendants exercised managerial control over the employment terms and conditions of Plaintiff and similarly situated employees and exercised the power and authority to (i) fire and hire, (ii) determine the rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiff and similarly situated employees.

33. At all times, Plaintiff could complain to Individual Defendants directly regarding any of the terms his employment, and Individual Defendants would have the authority to effect any changes to the quality and terms of Plaintiff's employment.

34. Individual Defendants exercised functional control over the business and financial operations of Plaintiff and similarly situated employees, including calculation and payment of wages, recording hours, tax withholdings, wage notices, and adhering to Federal and State regulations for employment practices and compensation.

35. At all relevant times, TREITEL is an "employer" and is an "enterprise engaged in commerce" within the meaning of the FLSA and the Regulations thereunder.

36. At all relevant times, TURDEIV is an "employer" and is an "enterprise engaged in commerce" within the meaning of the FLSA and the Regulations thereunder.

37. At all relevant times, JOHN and JANE DOES 1-2 are an "employer" and an "enterprise engaged in commerce" within the meaning of the FLSA and the Regulations thereunder.

38. At all relevant times, Individual Defendants own, operate and control Defendant LUXE EVENT day-to-day operations and management and jointly employed Plaintiff and other similarly situated employees.

39. Individual Defendants, either directly or indirectly, has hired and fired Plaintiff and other employees, controlled Plaintiff's work schedule and employment conditions, determined his payment rate and kept at least some records regarding Plaintiff's employment.

40. Upon information and belief, Individual Defendants are regularly at the place of business and instructing employees what to do, are authorized to hire and terminate employees, change their pay and pay schedules, and maintain records regarding employee hours worked and compensation.

## STATEMENT OF FACTS

41. Defendants own and operate an event rental company providing luxury items, including furniture, for events, including but not limited to, weddings operating under the name "Luxe Event Rentals.

42. Defendants employed Plaintiff and other similarly situated employees to physically prepare and move such furniture and other event items and fixtures from Defendants' warehouses and to deliver to the venues of events, assemble, setup, clean, and return the items back to Defendants' warehouses.

43. Plaintiff commenced employment with the Defendants in or about April 2021, earning $15.00 per hour working out of Defendants' Brooklyn warehouse.

44. Plaintiff was employed by Defendants from April 2021 to July 2024.

45. Throughout Plaintiff's employment, his hourly rate increased from $15.00 to $19.00 per hour.

46. At all times herein, Plaintiff was not compensated the overtime premium of one-and-half times his regular rate of pay for each hour worked in excess of 40 hours per week.

47. At all times herein, Plaintiff provided non-exempt work for Defendants including but not limited to, driving Defendants' trucks, loading and unloading fixtures and furniture of Defendants from Defendants' warehouses, delivering and assembling the fixtures and furniture from the venues of Defendants' clients, wrapping and preparing the rented items for delivery and unloading at Defendants' warehouse.

48. At all times herein, Defendants directed the work of Plaintiff and other similarly situated employees including but not limited to, providing Plaintiff and similarly situated employees with trucks, wrapping material, and tools to transport Defendants fixtures and furniture to clients of Defendants, directing Plaintiff and similarly situated employees to correspond with the clients of Defendants with regard to delivery and assembly, and otherwise controlled all aspects of Plaintiff's work in furtherance of Defendants' business.

49. In his capacity, Plaintiff's job duties entailed, but were not limited to:

   a. Preparing and packing up the rented fixtures and items at Defendants' place of business;

   b. Loading/Unloading rented fixtures and items to/from Defendants' place of business onto Defendants' truck;

   c. Driving Defendants' truck to Defendants' client's event destination;

   d. Loading/Unloading rented fixtures and items to/from Defendants' truck at the event destination;

   e. Assembling the items and fixtures at the delivery destination;

   f. Packing up the rented fixtures and items after event(s) and loading onto Defendants' truck;

   g. Driving Defendants' truck back to the Defendants' place of business and unloading the rented fixtures and items; and

   h. Cleaning Defendants' fleet of approximately 15 trucks;

50. Defendants normally scheduled Plaintiff to work six (6) days per week, but the days were random and inconsistent and required Plaintiff to regularly work significantly more than 40 hours per week and at times working seven (7) days per week as Defendants assigned "jobs" which were often more than one job a day or consecutive jobs.

51. By way of just one example, on November 3, 2023, Plaintiff worked from 5:00 AM – 7:00 PM,

totaling 14 hours.

52. On the same date, Plaintiff worked from 10:00 PM to the next morning, November 4, 2023, 6:00 AM, totaling 8 hours.

53. Thereby, from November 3, 2023 to November 4, 2023, Plaintiff worked a total of 22 hours.

54. On November 4, 2023, Plaintiff worked again from 9:00 AM – 7:00 PM, totaling 10 hours.

55. On November 4, 2023, Plaintiff worked again from 10:00 PM to 5:30 AM, the next morning November 5, 2023, totaling 7.5 hours.

56. Defendants posted the "jobs" to Defendants' Telegram Group titled "Luxe Team" to which Plaintiff was an added member and witnessed that there were at least 114 active members in Defendants' group similarly situated to Plaintiff.

57. On any given week, Plaintiff worked between 40 to 100 hours per week.

58. By way example, Plaintiff worked significant hours over 40 hours a week without compensation for overtime premiums, including but not limited, to the following dates:

   a. The week of May 18 – May 22, 2021, Plaintiff worked seventy-six (76) hours.

   b. The week of June 7 – June 13, 2021, Plaintiff worked ninety-six and one-half (96.5) hours.

   c. The week of June 15 – June 20, 2021, Plaintiff worked forty-eight and one-half (48.5) hours.

   d. The week of June 21 – June 26, 2021, Plaintiff worked thirty-one and one-half (31.5) hours, and on June 22, 2021, alone, Plaintiff worked from 7:00 AM – 2:00 AM the following day.

   e. The week of June 28 – July 3, 2021, Plaintiff worked fifty-three (53) hours.

   f. The week of August 4 – August 8, 2021, Plaintiff worked seventy-one (71) hours.

   g. The week of August 17 – August 22, 2021, Plaintiff worked seventy and one-half (70.5)

hours.

h. The week of August 23 – August 28, 2021, Plaintiff worked one hundred one and one-half (101.5) hours.

i. The week of October 30 – November 5, 2023, Plaintiff worked ninety-five and one-half (95.5) hours.

j. The week of November 6 – November 12, 2023, Plaintiff worked seventy-two and one-half (72.5) hours.

k. The week of November 13 – November 19, 2023, Plaintiff worked seventy-three (73) hours.

l. The week of November 27 – December 3, 2023, Plaintiff worked forty-one and one-half (41.5) hours.

m. The week of December 4 – December 10, 2023, Plaintiff worked eighty-one (81) hours.

n. The week of December 11 – December 17, 2023, Plaintiff worked sixty-seven (67) hours.

o. The week of December 25 – December 31, 2023, Plaintiff worked sixty-five (65) hours.

p. The week of February 19 – February 25, 2024, Plaintiff worked fifty-three (53) hours.

q. The week of February 26 – March 3, 2024, Plaintiff worked seventy-one and one-half (71.5) hours.

r. The week of March 4 – March 10, 2024, Plaintiff worked fifty-seven and one-half (57.5) hours.

s. The week of March 18 – March 24, 2024, Plaintiff worked fifty-eight and one-half (58.5) hours.

59. While Plaintiff worked well over 40 hours a week, Defendants failed to compensate Plaintiff at the overtime premium of one-and-half his regular rate of pay and instead compensated him as

his regular rate of pay.

60. At all times herein, Defendants did not establish or maintain time tracking or recording measures for Plaintiff and similarly situated employees.

61. Plaintiff was paid on a weekly basis via check by various entities including most recently "Maverick Group".

*Defendants' Failure to Pay Lawful Wages*

62. Defendants as employers have statutory obligations towards their employees, including paying employees for all of the hours they worked, paying the overtime premium of one-and-half times their regular rate for each hour worked in excess of 40 hours per week, and making, keeping, and preserving proper time and payroll records.

63. Defendants were aware of their requirement to compensate Plaintiff for each hour worked, and to pay the overtime premium of one-and-half his regular rate of pay for each hour worked in excess of 40 hours per week.

64. At a minimum, Defendants failed to take the necessary steps to ascertain their duties with respect to the payment of wages to their employees.

65. Nevertheless, Defendants failed to pay Plaintiff his proper wages, including overtime wages.

66. As such, various violations of the law which are alleged herein were committed intentionally and willfully by Defendants.

67. Defendants orchestrated this payment scheme to circumvent compensating their employees their proper wages and tax reporting to the Federal, State, and City government.

68. Defendants reaped an economic benefit from New York and at the detriment of Plaintiff and other similarly situated employees by failing to pay Plaintiff and other similarly situated employees proper wages and by intentionally failing to withhold federal, state, and local deductions for taxes and statutory unemployment and disability deductions.

69. Moreover, Plaintiff and similarly situated employees were paid their weekly wages by various entities other than Defendant LUXE EVENT including most recently "Maverick Group".

70. Upon information and belief, Defendants orchestrated this payment scheme to avoid accountability and further mislead Plaintiff and similarly situated employees, intentionally depriving them of the necessary and statutory information employers are required to present to employees.

71. Defendants intentionally failed to issue Plaintiff and similarly situated employees with a Wage Statement and Notice under New York Labor Law, which requires employes to identify among other information, the dates of work covered by the payment of wages; name of the employee; name, address, and phone number of the employer; rate or rates of pay and basis thereof and, where applicable, the overtime rate of pay.

72. As a result, Plaintiff was harmed as Plaintiff was not aware of his overtime rate and lost significant wages in the form of overtime premiums.

73. In addition, on or about July 2024, Defendants entirely removed Plaintiff from the schedule and the Telegram Group, effectively terminating Plaintiff's employment.

74. As a result of Defendants' failure to provide Plaintiff with a proper or accurate wage notice, Plaintiff was unaware he was entitled to unemployment insurance benefits upon his termination.

75. Accordingly, Defendants deprived Plaintiff and similarly situated employees of significant wages and benefits including but not limited to overtime premiums, unemployment benefits, social security, and disability leave.

***Facts Relating to Defendants as Joint Employers***

76. Upon information and belief, the Individual Defendants are managing-members, officers, directors, and managers of Corporate Defendants.

77. At all times herein, the Corporate Defendants were controlled by the Individual Defendants.

78. At all times herein, the Individual Defendants conducted business as the Corporate Defendants.

79. At all times herein, the Individual Defendants acted for and on behalf of the Corporate Defendants, with the power and authority vested in them as owners, officers, agents, managers, and employees of Corporate Defendants, and acted in the course and scope of their duty and function as owners, mangers, agents, and officers of Corporate Defendants.

80. Plaintiff observed the Individual Defendants at Defendant LUXE EVENT's place of business distributing paychecks and addressing business related matters including but not limited to arrangements of "jobs", assignment of Defendants' trucks to employees, instructions to Plaintiff and similarly situated employees in performing their duties, arrangement of schedules, hiring, termination, and discipline. In addition, Plaintiff observed Individual Defendants' participation in the Defendants' Telegram Group, which posted "jobs" that needed to be accounted for by Plaintiff and similarly situated employees.

81. At all times herein, Individual Defendants directly managed, handled, or were otherwise ultimately responsible for, the payroll and/or payroll calculations and signing or issuing checks to Plaintiff and similarly situated employees.

82. At all times herein, Individual Defendants had control over the conditions of employment of Plaintiff, including his hiring and firing, his work schedule, the rate and method of payment of his wages, and the maintenance of his employment records.

83. As a matter of economic reality, all Defendants are joint employers of Plaintiff, and as a result, all Defendants, individually, collectively, and jointly and severally, are liable for all claims made herein.

## FLSA COLLECTIVE ACTION ALLEGATIONS

84. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employee employed by the Defendants on or after the date that is three (3) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

85. From personally observing the other employees and speaking with them, Plaintiff knows that other similarly situated employees of Defendants performed the same duties and received the same compensation structure by Defendants.

86. Indeed, Plaintiff observed at least ten other individuals who were employed by Defendants in the same position as Plaintiff and worked similar hours without being compensated at the overtime premium of one-and-half their regular rate.

87. Plaintiff often conversed with these employees and observed that they were being underpaid wages.

88. Moreover, as a member of Defendants' Telegram Group titled "Luxe Team", Plaintiff also observed that there were at least 114 members in the group to which Defendants posted "jobs" similar to the duties assigned to Plaintiff.

89. At all times herein, Defendants maintained control over the Telegram Group and removed Plaintiff from the group.

90. Moreover, upon Plaintiff retaining an attorney, Plaintiff was advised by other employees that Defendants directed employees to a room to sign "documents" if they wanted to continue working.

91. At all relevant times, Plaintiff and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices and procedures,

protocols, routines, and rules, all culminating in a willful failure and refusal to pay them proper wage. The claims of the Plaintiff stated herein are essentially the same as those of the FLSA Collective Plaintiffs.

92. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail in English and any other language.

93. Under 29 U.S.C. § 206, Plaintiff seek to assert these allegations and claims as a collective action for:

> All persons whom Defendants employ and have employed who were employees and other comparable positions any time since November 21, 2021 to the entry of Judgment in this case (the "Collective Action Period"), who were non-exempt employees under the FLSA (the "Collective Action Members").

94. Plaintiff and the Collective Action Members are similarly situated on several legal and factual issues, including:

a. Defendants employed the Collective Action Members;

b. Collective Action Members performed similar duties;

c. Defendants failed to keep true and accurate records for all hours Plaintiff and Collective Action Members worked;

d. Defendants willfully and recklessly violated the FLSA;

e. Defendants failed to pay the Collective Action Members overtime compensation for hours worked in excess of forty (40) hours per workweek at the proper rate, violating the FLSA and the regulations promulgated thereunder;

f. Defendants improperly violated 29 U.S.C. § 203(m);

g. Defendants should be enjoined from such violations of the FLSA in the future;

## RULES 23 CLASS ALLEGATIONS – NEW YORK

95. Plaintiff also brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees providing packaging, assembly and delivery, employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class period").

96. All said persons, including the Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class member are also determinable from the Defendants' records.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under F.R.C.P. Rule 23.

97. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.  Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants; upon information and belief, there are in excess of forty (50) Class Members as Defendants' Telegram Group titled "Luxe Team" includes at least 114 members.

98. Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate action.  All the Class members were subject to the same corporate practices of Defendants, as alleged herein. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. The Plaintiffs and other Class members

sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

99. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. The Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

100.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress to wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.

101.     The adjudication of the individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.

102.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for the Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions which

they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

103.    Defendants and other employers throughout the state violate the New York wage laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing those risks.

104.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

(a) Whether Defendants employed Plaintiff and Class members;

(b) Whether Defendants paid the Plaintiff and Class members the proper minimum wage and overtime premium compensation;

(c) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class members for their work;

(d) What are and were the policies, practices, programs, procedures, protocols and plans of the Defendants regarding the types of work and labor for which the Defendants did not pay the Class members properly;

(e) Whether Defendants properly notified the Plaintiff and Class members with proper notices of their hourly rate and overtime rate and the hours worked.

## COUNT I
## FAILURE TO PAY OVERTIME PREMIUM UNDER FLSA
### (Brought on behalf of Plaintiff and FLSA Collective Plaintiffs)

105.    Plaintiff hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

106.    By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

107.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

108.    Defendants' failure to pay overtime caused Plaintiff and Collective Class to suffer loss of wages and interest thereon.

109.    Plaintiff and the Collective Class are entitled to recover from Defendants unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## COUNT II
## FAILURE TO PAY OVERTIME PREMIUM UNDER NYLL
### (Brought on Behalf of Plaintiff and the Class)

110.    Plaintiff hereby repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

111.    Defendants willfully violated Plaintiff and the Class's rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

112.    Defendants' failure to pay overtime premium compensation caused the Plaintiff and the Class to suffer loss of wages and interest thereon.

113.    Plaintiff and the Class are entitled to recover from the Defendants unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

## COUNT III
## FAILURE TO PROVIDE WAGE STATEMENT – NYLL
### (Brought on Behalf of Plaintiff and the Class).

114.    Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

115.    Defendants have willfully failed to supply Plaintiff and the Class with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

116.    Due to the Defendants' violations of the NYLL, Plaintiff and the Class were harmed as Plaintiff, and the Class, were and are unaware of their overtime rate and as a result, lost wages and additional income they were entitled to.

117.    In addition, Plaintiff and the Class were not provided wages notices identifying their true employer, their gross pay, hours worked, statutory deductions, and net compensation.

118.    As a result of Defendants failure to provide accurate and a proper wage notice with statutory deductions for social security, unemployment and disability, Plaintiff and the Class

were and are not aware of any employee and employer contributions and thus did not file for

such benefits afforded to employees to which they would have been entitled to if such

deductions were made and noted on wage statements.

119.      In addition, as a result of Defendants' failure to provide a wage notice, Plaintiff and the

Class were not aware they were entitled to overtime.

120.      As a result, Plaintiff and the Class are entitled to recover from Defendants one hundred

dollars ($100) for each workweek that the violations occurred or continue to occur, up to a

maximum of twenty-five hundred dollars ($2,500), as provided for by NYLL, Article 6 §§ 190

*et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-

judgment and post-judgment interest, and injunctive and declaratory relief.

### COUNT IV
### CIVIL DAMAGES FOR FRAUDULENT FILING
### OF INFORMATION RETURNS UNDER 26 U.S.C. §7434(a).
### (Brought on Behalf of Plaintiff and the Class)

121.      Plaintiff repeats and realleges each and every allegation of the preceding paragraphs

hereof with the same force and effect as though fully set forth herein.

122.      By failing to provide Plaintiff with accurate IRS Forms W-2 for all of the tax years

during which they was employed by Defendants, and failing to properly record, account for,

and report to the IRS all monies actually earned and paid to Plaintiffs for all of the work

Plaintiffs performed during the course of their employment with the Defendants, and failing to

properly withhold amounts listed on W-2 forms as monies withheld, Defendants filed

fraudulent information returns with the IRS, in violation of 26 U.S.C. §7434.

123.      Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent

information return with respect to payments purported to be made to any other person, such

person may bring a civil action for damages against the person so filing such return." 26 U.S.C.

§ 7434(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for an Order:

A. Requiring Defendants to file with the Court and provide to Plaintiff's counsel a list of all names and current (or best known) home addresses and email addresses of all individuals who currently work or have worked for Defendants as non-exempt during the applicable statute of limitations period, but were not paid proper wages;

B. Authorizing Plaintiff's counsel to issue a notice informing Collective Action Members and Class Members that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit;

C. Designating Plaintiff as class representative of the Collective Action Member and Class Members, and counsel of record as Class Counsel;

D. Finding that Defendants willfully violated the applicable provisions of the FLSA and NYLL by failing to pay all required wages to Plaintiff and the Collective Action Members and Class Members;

E. Granting judgment in favor of Plaintiff and the Collective Action Members and Class Members on their FLSA and NYLL claims;

F. Awarding compensatory damages to Plaintiff and the Collective Action Members and Class Members in an amount to be determined;

G. Awarding pre-judgment and post-judgment interest to Plaintiff and the Collective Action Members and Class Members;

H. Awarding liquidated damages to Plaintiff and the Collective Action Members and Class Members;

I. Awarding all costs and reasonable attorney's fees incurred prosecuting this claim;

J. Awarding reasonable incentive awards to the Named Plaintiff to compensate him for the time and effort they have spent and will spend protecting the interest of other Collective Action Members and Class Members, and the risks they are undertaking;

K. Awarding appropriate equitable and injunctive relief to remedy violations, including but not necessarily limited to an order enjoining Defendants from continuing its unlawful practices;

L. Awarding any further relief, the Court deems just and equitable; and

M. Granting leave to add additional case plaintiff by motion, the filing of written consent forms, or any other method approved by the Court.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the

Complaint raises.

Dated:  December 12, 2024
       New York, New York

                          Respectfully submitted,

                          **EMRE POLAT, PLLC**
                          EMPLOYMENT ATTORNEYS

                          */s/ Emre Polat*

                          _____
                          Emre Polat, Esq.
                          Grace Hyun, Esq.
                          45 Broadway, Suite 1420
                          New York, New York 10006
                          Tel.: (212) 480-4500
                          *Attorneys for Plaintiff*